**\*For Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF N EW JERSEY

| | | |
|---|---|---|
| CHARLES HENDRIX, SR., | : | Civil Action No. 06-3942 (FLW) |
| | : | |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| CITY OF TRENTON, <u>et al.</u>, | : | |
| | : | |
| Defendants. | : | |

**WOLFSON, District Judge**:

Presently before the Court is a motion filed by Defendant Officer David Neiderman ("Neiderman" or "Defendant"), to dismiss Plaintiff Charles Hendrix, Sr.'s ("Hendrix" or "Plaintiff") Complaint.[1]  Plaintiff's claims arise out of an alleged physical altercation between Hendrix and defendant officer which resulted in the arrest of Hendrix.  Plaintiff was charged with aggravated assault and resisting arrest.  In his Complaint, Plaintiff alleges excessive force and a state law claim of assault and battery.  The issue presented in this motion is whether <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), applies to bar Plaintiff's claims when Plaintiff had resolved his criminal charges by participating in New Jersey's Pretrial Intervention Program ("PTI").  For the reasons that follow, Defendant's motion is **DENIED**.

---

[1]  While Plaintiff characterizes Defendant's motion as summary judgment, the motion herein was filed as a motion to dismiss.  Indeed, Defendant's initial brief is clearly titled, "Brief in Support of Defendant Neiderman's Motion to Dismiss Plaintiff's Claims for Excessive Force and Assault and Battery."  As such, the Court will decide this motion as a motion to dismiss.

I.      BACKGROUND FACTS AND PROCEDURAL HISTORY

At the time of the pertinent events, Plaintiff was a fifty-three year old African-American male residing at 57 Daymond Street, Trenton, New Jersey.  Compl. ¶¶ 6, 11.  Defendants Neiderman and Jason Woodhead ("Woodhead") were police officers in the City of Trenton Police Department.  Id. ¶¶ 8, 9.  At or about 6:00 PM on September 2, 2004, Officers Neiderman and Woodhead were patrolling an area of Trenton known for drug trafficking when they observed what they believed was a drug transaction.  See Neiderman Dep. T59:21-23.  In front of Hendrix's house, the officers ordered the two men they believed to be drug dealers to place their hands on the police car.  Then, Hendrix approached from nearby and confronted the officers because the two men were friends of Hendrix.  Neiderman Dep. T92:2-93:4; 96:8-97:13.  In response, the officers ordered Hendrix to go inside his house.  Compl. ¶¶ 12, 13.  After complying with the Officers' instructions, Hendrix opened his front screen door to advise some neighborhood children to leave the area.  Id. ¶15.  Allegedly, Neiderman screamed to Hendrix to shut the door and then simultaneously closed the door on Hendrix's head.  Id. ¶¶ 16, 17.  Neiderman then allegedly tore the screen door off its hinges, entered Hendrix's residence and punched him, causing Hendrix's nose to break.  Id. ¶¶ 17, 18.  Thereafter, Neiderman and Woodhead allegedly proceeded to beat, choke and spray Hendrix with pepper spray.  Id. ¶¶ 19, 20.  Neiderman then applied his knees to Hendrix's chest, which caused one or more of his ribs to break.  Id. ¶ 23.  Finally, the officers allegedly threw Hendrix down the front steps onto the street where they handcuffed and arrested him.  Id. ¶¶ 24, 25.  According to Hendrix, he did not

resist arrest or provoke Neiderman or Woodhead throughout the encounter.  Id. ¶ 27.  However, the Officers' account of the event differs.

According to Neiderman, Hendrix initiated the physical confrontation by striking Neiderman with the screen door.  Neiderman Dep. T102:4-104:21; 110:7-112:4; 114:10-20.  At that point, Neiderman grabbed Hendrix's arm and advised him that he was under arrest for obstructing the investigation.  Id. T114:21-24; 158:2-159:11.   Then, Hendrix punched Neiderman's arm, causing Neiderman to lose his grip on Hendrix.  Id. T160:4-161:20.  After Hendrix retreated into his residence, Neiderman followed him in through the front door.  Id.; Id. T115:22-116:3; 146:2-11; 161:1-7; 163:14-16; 207:16-208:14.  Inside, as Neiderman approached to arrest Hendrix, Hendrix took a "boxing" stance with his fists up.  Id. T163:22-164:7.  Hendrix then swung at Neiderman but missed, prompting Neiderman to respond by punching Hendrix's face.  Id. T163:23-165:15; T166:23-25.  Neiderman then attempted to handcuff Hendrix, but he violently pulled away.  Id. T173:3-6.  In response, Defendant officer attempted to grab Hendrix, but Hendrix again pulled away, this time causing both men to fall to the couch and then onto the floor.  Id. T173:7-174:1.  At that time, Neiderman was able to get on top of Hendrix and ordered him to place his arms behind his back.  Ignoring the order, Hendrix continued to struggle by flailing his arms and kicking Neiderman.  Id. T174:6-176:19; 178:15-179:19.  In the meantime, Woodhead was detaining the suspected drug dealers and in order to see inside Hendrix's house, he forced the door open, causing it to fall of its hinges.  Woodhead Dep. T87:6-89:1.  Woodhead initially remained outside the house to observe them; then, he approached close enough to spray

Hendrix with pepper spray to subdue him, though this appeared to have no effect on him as Hendrix continued to kick Neiderman.  Neiderman Dep. T180:5-11; Woodhead Dep. T114:3-6. Since the spray was ineffective, Neiderman applied his knee to the side of Hendrix to avoid his attacks, but Hendrix was nevertheless able to get up onto his knees.  Neiderman Dep. T17:4-19; 192:19-193:8; T193:9-20.  As Hendrix crawled to the door, Neiderman lost his grip and Hendrix fell to the sidewalk and the Officers were able to handcuff him.  Id. T195:16-196:6; Woodhead Dep. T114:16-22.

Due to the alleged incident, Neiderman filed a criminal complaint against Hendrix for aggravated assault and resisting arrest.  According to the criminal complaint, Hendrix struck Neiderman's left arm, kicked him, and physically struggled with the officer to avoid being handcuffed.  Crim. Compl.  On March 31, 2005, Hendrix was indicted for (1) aggravated assault in the third degree and; (2) resisting arrest in the third degree.  Ultimately, these charges were dismissed because Hendrix chose to participate in, and completed, the PTI program pursuant to N.J.S.A. 2C:43-12.  Plaintiff filed the instant Complaint in August 2006.  Subsequently, the Court granted summary judgment in favor of Defendant on Counts IV, V and VII and dismissed other defendants in this case.  The only remaining claims before the Court are Counts I and II asserted against Neiderman.  Specifically, Count I alleges excessive force in violation of 42 U.S.C. § 1983; and Count II avers a common law claim of assault and battery.

After the conclusion of discovery, the Court conducted a pre-trial conference wherein the Court questioned the parties with respect to the effect of Plaintiff's participation in the PTI

4

program in connection with the Supreme Court's holding of <u>Heck v. Humphrey</u> and its progeny

of cases in the Third Circuit.  In response to this inquiry, Defendant filed the instant motion to

dismiss based upon the preclusive effect of the PTI program pursuant to the <u>Heck</u> principles. It is

this issue that the Court addresses in this motion.

As a preliminary matter, since Defendant moves to dismiss pursuant to <u>Fed. R. Civ. P.</u>

12(b)(6), the Court must take the allegations as set forth in Plaintiff's Complaint as true.

However, the disputed incident which gives rise to Plaintiff's claims against Defendant,

Plaintiff's arrest and subsequent criminal charges, were subject to a state criminal proceeding

whereby Plaintiff resolved his charges through the PTI program.  As such, the Court will not

draw inferences in Plaintiff's favor that are inconsistent with the criminal complaint. <u>See</u> <u>Scott v.</u>

<u>Harris</u>, 127 S.Ct. 1769, 1776 (2007). Second, in accordance with <u>Heck v. Humphrey</u>, 512 U.S.

477 (1994), the Court will not draw inferences in Plaintiff's favor that would necessarily negate

Plaintiff's criminal charges.  Accordingly, the Court will construe the allegations in Plaintiff's

Complaint as true only insofar as they do not undermine the basis of Plaintiff's charges resolved

through the PTI program, as it will be discussed below.

## II.    DISCUSSION

### A.    Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard.  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating … a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles.  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948-49 (2009).  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id.   Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not

entitled to the  assumption of truth." <u>Id.</u> at 1949.  Moreover, in deciding a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiffs' claim.  <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 222 n. 3 (3d Cir. 2004).

### B.     Whether PTI Constitutes a Favorable Termination Under <u>Heck</u>

Defendant's motion is premised on the notion that Plaintiff's claims are barred under the principles enunciated by the Supreme Court in <u>Heck</u> that Plaintiff's participation in the PTI program resulted in an unfavorable termination of the underlying criminal charges against him. In response, Plaintiff contests the applicability of <u>Heck</u> here since his participation in the program resulted in the dismissal of the charges against him.  As such, he was not convicted of the underlying crimes, a necessary condition prior to a <u>Heck</u> bar.

In <u>Heck</u>, the Supreme Court held, <u>inter alia</u>, that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.

<u>Heck</u>, 512 U.S. at 486-87. Thus, the essential inquiry is whether the claims asserted by the plaintiff would "necessarily imply the invalidity of his conviction."  <u>Wallace v. Kato</u>, 549 U.S. 384, 398 (2007) (Stevens, J., concurring) (quoting <u>Heck</u>, 512 U.S. at 486-87).  Further, a plaintiff generally cannot maintain a § 1983 action unless the "termination of the prior criminal

proceeding [was resolved] in favor of the accused." Gilles v. Davis, 427 F.3d 197, 210 (3d Cir. 2005) (quoting Heck).

In light of these precepts, the Court must first determine whether participation in the PTI program constitutes a "favorable" termination of the charges against Hendrix. Plaintiff claims that no Third Circuit case is on point; instead he relies on out-of-circuit cases, S.E. v. Grant County Bd. of Educ., 544 F.3d 633 (6th Cir. 2008) and Butts v. City of Bowling Green, 374 F. Supp. 2d 532 (W.D. Ky. 2005), to support his argument that where charges against a plaintiff are dismissed after the completion of a pretrial diversion program, Heck does not apply to bar subsequent civil claims.

Contrary to Plaintiff's assertions, the Third Circuit has clearly held that participation in a substantially similar type of program in the state of Pennsylvania, the Accelerated Rehabilitative Disposition ("ARD") program, is not a favorable termination under Heck.[2] Gilles 427 F.3d at 211.[3] In so holding, the circuit court found that under the ARD program, a criminal defendant

---

[2]

Having surveyed case law in different circuits, the Court recognizes that the appeals courts disagree as to the application of the Heck principles to PTI types of dispositions. Utilizing the split in authorities, Plaintiff cites to the Sixth Circuit's decision in Grant County to demonstrate that New Jersey's PTI program does not qualify as a favorable termination under Heck. Notably, the Eleventh Circuit summed up its disagreement with the Third Circuit in McClish v. Nugent, 483 F.3d 1231 (11th Cir. 2007), by expressly rejecting the notion that Heck has a preclusive effect on claims that were the subject of pretrial intervention programs. The court reasoned that Heck does not bar "an action which would impugn an anticipated future conviction." Id. at 1252 (citations and quotations omitted). However, as cogent as this reason would appear, the Court is constrained by Third Circuit precedent; this Court's function is not to second-guess the rationale and the policy considerations of this circuit's appellate court, rather, it is bound by it.

[3]

Subsequent to Gilles, despite opportunities to modify its ruling, the Third Circuit has instead reaffirmed its decision regarding Heck's applicability in this context. See Fuchs v. Mercer County,

avoids both trial and incarceration and, ultimately, receives expungement of the record, provided that the defendant completes a probationary period.  Id. at 209.  As such, a defendant participating in the ARD program does not admit guilt, but necessarily waives his right to prove his innocence.  Id.  In that regard, the court delineated the purpose of ARD:

> [ARD] rehabilitate[s] offenders and promptly dispose[s] of minor criminal charges. See Pa. Crim. R. 300-20 & Committee Introduction. The program targets first time offenders charged with minor crimes that appear receptive to treatment and rehabilitation. District attorneys administer the ARD program and have discretion whether to request the court to grant it for a given defendant. Commonwealth v. Armstrong, 495 Pa. 506, 434 A.2d 1205 (Pa. 1981). Admission into ARD is not a right. Commonwealth v. Paul, 383 Pa. Super. 486, 557 A.2d 357, 358 (1989). But prosecutors do not have unbridled discretion whether to grant or deny the program. Commonwealth v. Lutz, 508 Pa. 297, 495 A.2d 928, 935 (1985). See generally Cain v. Darby Borough, 7 F.3d 377, 382 (3d Cir. 1993) (en banc).

Id. at 209 n.9.

The similarities between the ARD and the PTI are striking.  First, the public policy behind the PTI program, according to N.J.S.A. 2C:43-12, is to allow certain criminal defendants access to supervisory treatment and to enable such offenders to avoid prosecution by receiving early rehabilitative services.  In short, the "primary purpose of [PTI] is to assist in the rehabilitation of worthy defendants, and, in the process, to spare them the rigors of the criminal justice system."  State v. Watkins, 193 N.J. 507, 513 (2008).  Like the ARD program, the PTI program rehabilitates first time offenders charged with minor or "victimless" crimes. N.J.S.A. 2C:43-12.  Admission into the PTI program is not a right, but a prosecutor must weigh certain

---

260 Fed. Appx. 472 (3d Cir. 2008).

criteria in order to determine a defendant's eligibility for PTI.  Id.  Thus, prosecutors do not have

unbridled discretion to grant or deny entry into PTI.

Due to these congruencies, Plaintiff's attempt to distinguish the ARD and PTI programs fails.  First,

Hendrix makes a distinction by contending that the criminal defendant's record was expunged in

Gilles while here, the charges against Hendrix were dismissed.  While the two programs differ in

the treatment of the charges, the difference is negligible for the purpose of applying the Heck

analysis.  Indeed, expungement of the criminal record is arguably a more "favorable" termination

of criminal charges than the dismissal of such charges, yet the Third Circuit held that the ARD

program, which results in expungement, is not a favorable termination for the purposes of Heck.

Moreover, this minor distinction cannot outweigh the aforementioned procedural and policy

similarities between the ARD and the PTI.

Furthermore, Plaintiff mischaracterizes the basic facts and holding of Gilles to support his flawed

position.  He argues that Gilles is distinguishable from the facts herein because the plaintiff in

Gilles, Petit, pled guilty to the charges against him. Contrary to Plaintiff's assertion, Petit did not

plead guilty; instead, he resolved those charges by entering into the ARD program.  Gilles 427

F.3d at 209 n. 8.  Second, Plaintiff maintains that the rule set forth in Gilles applies only to

malicious prosecution cases.  This reading is far too narrow in scope.  The issue before the court

in Gilles was whether participation in the ARD program constituted a favorable termination

under Heck in regards to § 1983 claims, not specifically malicious prosecution.  Id. at 210

("Because the holding of Heck applies, Petit cannot maintain a § 1983 claim unless successful

completion of the ARD program constitutes a 'termination of the prior criminal proceeding in favor of the accused.' … We have not had occasion to address this issue directly").  In fact, the court explicitly held that "the ARD program is not a favorable termination under Heck," omitting any language regarding malicious prosecution.  Id. at 211.  Finally, while Plaintiff cites Cain v. Darby Borough, 7 F.3d 377 (3d Cir. 1993), for the proposition that allowing pretrial agreements to bar § 1983 claims is against public policy, that same argument was explicitly rejected in Gilles.  The Gilles court noted that Cain was "decided before Heck  and did not consider whether ARD was a favorable termination of the criminal charge sufficient to bring a § 1983 claim." Cain 7 F.3d at 210, n. 10.  As such, Plaintiff's reliance on Cain is misplaced.

Taken together, the policy purpose and procedural similarities between the ARD and the PTI, this Court concludes that Gilles' reasoning is equally applicable in this case.  Thus, the Court holds that participation in New Jersey's PTI program does not meet the favorable termination requirement of Heck, consistent with the holding of Gilles.

### C.    Applicability of Heck's Favorable Termination Rule

While Hendrix's participation in the PTI program did not terminate the underlying criminal charges in a favorable manner, the inquiry as to whether Heck bars Hendrix's § 1983 action does not end here.  The Court must still determine "if a favorable judgment on [this] § 1983 damages claim would necessarily imply the invalidity of the plaintiff's conviction." Jennings v. Fetterman, 197 Fed. Appx. 162, 164 (3d Cir. 2006).  In order to resolve this question, the Court must compare the elements of the underlying charges against Plaintiff – aggravated

assault and resisting arrest – with Plaintiff's claims against Neiderman, namely, excessive force and assault and battery.  See Nelson v. Jashurek 109 F.3d 142, 145 (3d Cir. 1997).

Under N.J.S.A. 2C:12-1(b)(1), a person is guilty of aggravated assault if he "[c]ommits a simple assault as defined in subsection a. (1), (2) or (3) of this section upon: (a) Any law enforcement officer acting in the performance of his duties while in uniform or exhibiting evidence of his authority or because of his status as a law enforcement officer."  Under § 2C:12-1(a), a person is guilty of simple assault if he "(1) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (2) negligently causes bodily injury to another with a deadly weapon; or (3) attempts by physical menace to put another in fear of imminent serious bodily injury."

In order to find excessive force, the Court must first evaluate a plaintiff's claim under the Fourth Amendment standard of objective reasonableness, without regard to underlying motivation. See Graham v. Connor, 490 U.S. 386, 395-97 (1989). This requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396 (internal citation omitted).  "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the

number of persons with whom the police officers must contend at one time." <u>Sharrar v. Felsing</u>,

128 F.3d 810, 822 (3d Cir. 1997).

In evaluating excessive force claims, courts must adopt an officer's "on the scene"

perspective:

> The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments- in circumstances that are tense, uncertain, and rapidly evolving- about the amount of force that is necessary in a particular situation.

<u>Graham</u>, 490 U.S. at 396-97 (internal citations omitted).  "[A] police officer who is accused of

having used excessive force is not 'precluded from arguing that he reasonably perceived the facts

to be different from those alleged by the plaintiff,' but that '<u>contention</u> . . . must be considered at

trial.'"  <u>Rivas v. City of Passaic</u>, 365 F.3d 181, 199 (3d Cir. 2004)(emphasis in original and

citation omitted).

The gravamen of Plaintiff's position derives from the factual assertions made by

Neiderman himself.   Specifically, Plaintiff submits that according to Neiderman, Hendrix

initiated the physical confrontation by using the front door of his house to strike Neiderman on

the head.   Then, Hendrix assaulted the officer again by punching Neiderman's arm.   After that

point, Hendrix alleged that he was punched in the face and chest, choked, stomped on his head

and torso while on the ground, kneed in the ribs, thrown out of his home down the stairs, and

arrested.   Simply put, Plaintiff argues that Defendant was unreasonable in applying force to arrest

13

him after he had ceased any aggression towards Neiderman.  Moreover, Plaintiff alleges in his Complaint that after Defendant handcuffed him and advised him that he was under arrest, Neiderman pushed Plaintiff's head causing it to strike the ground.  See Compl., ¶¶ 24-27.  Under this scenario, Plaintiff claims that his aggravated assault charges would not be invalidated if he were to prevail in his excessive force claim.  To support his position, Plaintiff cites to various in-circuit and out-of-circuit cases.  Because each of Plaintiff's contentions require an in-depth analysis of the legal issues at hand, the Court will scrutinize these cases and discuss their relevance.

Plaintiff first cites this Court's decision in Ference v. Township of Hamilton, 538 F.Supp.2d 785 (D.N.J. 2008).  In his cursory argument, Plaintiff advances that the Court denied summary judgment in Ference on an excessive force claim based on Heck where allegations of excessive force occurred after the plaintiff's violation of criminal law.  However, a closer anaylsis of Ference reveals that the facts of that case are dissimilar to the present case.  In fact, the plaintiff in Ference was not charged with assault; rather, he was charged with, and convicted of, violating a municipal ordinance by failing to obey a police officer's instructions.  Id. at 812. This Court found that success on an excessive force claim would not be at odds with a conviction for failure to obey.  As such, the excessive force claim was not barred by Heck.

Next, Plaintiff relies on Owens v. City of Atlantic City, 2008 U.S. Dist. LEXIS 47584 (D.N.J. Jun. 6, 2008).  This is another case where the plaintiff was not convicted of assault. Instead, the defendant officer sought to preclude the plaintiff's excessive force claim under Heck

based upon the plaintiff's conviction for robbery and resisting arrest.  The court disagreed with the defendant and held that the underlying assault from the robbery was committed upon the victim of the crime, not the arresting officer.  Id. at *15.  Therefore, Heck did not apply.  In the same vein, the court decided that plaintiff Owen "has admitted that he used physical force or violence against Miller to purposefully prevent his arrest. Even with that admission, however, it could still be found that Miller used even more force--i.e., excessive and unreasonable force--in effecting plaintiff's arrest than plaintiff used in resisting arrest."  Id. at *18.

In the Fifth Circuit case of Ballard v. Burton, 444 F.3d 391 (5th Cir. 2006), Officer Burton shot the plaintiff, who later entered into an Alford plea with the government to simple assault on a different police officer, not the defendant.  The court first found that an Alford plea was not a favorable termination under Heck.  Id. at 397.  It then found that Heck did not bar an excessive force claim as to Burton because the plaintiff did not plead guilty to assaulting Burton, but rather, a different officer on the scene.  Accordingly, "[n]ot a single element of Ballard's simple assault conviction would be undermined if Ballard were to prevail in his excessive force claim against Burton . . . ."  Id. at 401-02.

While the Court finds the above cases not directly helpful to Plaintiff's position, the following cases demonstrate that in certain factual circumstances Heck does not bar a plaintiff's excessive force claim against the arresting officer, even when that plaintiff had pled guilty to, or was convicted of, assault: Wells v. Cramer, 158 Fed. Appx. 203 (11th Cir. 2005), Brengettcy v. Horton, 423 F.3d 674 (7th Cir. 2005) and Smithart v. Towery, 79 F.3d 951 (9th Cir. 1996).  The

rationale behind these courts' decisions is that at the time the officer allegedly had applied unreasonable or excessive force, the plaintiff was already subdued by the officer. Despite the plaintiffs having physically provoked the officer first, these courts found that the officer's assaultive behavior may have been excessive or gratuitous because these plaintiffs were no longer a threat to the officers' safety.

To illustrate, in Smithart, the plaintiff entered into an Alford plea for assault with a deadly weapon. The weapon in question was the plaintiff's 1973 Chevrolet truck which he drove towards defendants, a county sheriff's deputy and a highway patrolman. Smithart, 79 F.3d at 952. These officers had effected a traffic stop of the plaintiff's son on his property. Id. In bringing a § 1983 claim for excessive against the officers, the plaintiff alleged that after he exited his vehicle, defendants provoked him into a confrontation which they escalated beyond any necessary measure. Id. The plaintiff further alleged that the defendant officers, without probable cause, authority or justification, assaulted, arrested, handcuffed, and beat him with their batons, feet, and fists. While the Ninth Circuit affirmed the dismissal of the plaintiff's allegations that the defendants lacked probable cause to arrest him, and brought unfounded criminal charges against him pursuant to Heck, the court allowed the plaintiff's excessive force claim to proceed because it reasoned that the "defendants used force far greater than that required for his arrest and out of proportion to the threat which he posed to the defendants." Id. In other words, after the plaintiff exited the car and once he was arrested, the defendant officers' alleged excessive force was unreasonable in light of the fact that plaintiff had been arrested. Likewise, Brengettcy also

16

involved force used after plaintiffs' assaultive behavior had ended.   In that case, the Seventh

Circuit reversed the dismissal of the plaintiff's excessive force claim because the plaintiff

claimed that the officer attacked him, hit him while he was handcuffed, and after that, someone

kicked him down a nearby staircase.  Brengettcy,  423 F.3d at 683; see also Wells v. Cramer, 158

Fed. Appx. at 204 (to the extent that the inmate's complaint alleged an excessive use of force

after he was arrested, restrained, and posed no threat to the officers, his § 1983 action, if

successful, would not necessarily imply the invalidity of his underlying convictions and was not

Heck-barred).  While these cases are factually distinct from this case, the Court is nevertheless

persuaded by the reasoning and distinctions drawn by these courts.

The holdings of these cases focus on the conduct of the arresting police officer and the

defendant.  In that connection, each court, on summary judgment, discussed the chronology of

the underlying incident and scrutinized when, in the sequence of events, force was applied by

both the police officer and the defendant.  This Court must undertake the same analysis in order

to determine whether Hendrix's excessive force claim survives, albeit within the constraints of

the Rule 12(b)(6) standard.

In the Complaint, Hendrix avers that Neiderman initiated and continued to assault him

without any physical provocation.  Hendrix further avers that he did not physically retaliate to

defend himself from the alleged blows.  In other words, according to Plaintiff's allegations, all of

Neiderman's alleged assaultive behavior was gratuitous and excessive.  Defendant's testimony

stands in contrast to Plaintiff's version of the incident.  However, on a motion to dismiss, the

Court cannot rely upon Defendant's factual assertions.   Moreover, while the resolution of Plaintiff's underlying criminal charges through the PTI program seemingly contradicts some of Plaintiff's allegations, viewing the Complaint in the light most favorable to Plaintiff, the allegations that Plaintiff was subjected to excessive force <u>after</u> his arrest is not inconsistent with his assault charge.   In that connection, the Court focuses on two separate incidents of excessive force alleged in the Complaint: excessive force allegedly used by Neiderman during and after the course of Hendrix's arrest.

Neiderman argues that Plaintiff is precluded from asserting here that Defendant exerted unreasonable force when effectuating his arrest because Plaintiff chose not to claim self-defense during his state criminal proceeding; instead, the charges were resolved through the PTI program. For support, Defendant relies upon <u>Garrison v. Porch</u>, No. 04-1114, 2007 U.S. Dist. LEXIS 17223 (D.N.J. Mar. 9, 2007), and argues that <u>Heck</u> necessarily bars excessive force claims under an indistinguishable set of facts.   In <u>Garrison</u>, the plaintiff, who suffered a broken neck, was originally approached by police for urinating in public.   The plaintiff alleged that he could not recall resisting arrest, but stated he was pulled to the ground and had his face forced into the ground.   <u>Id.</u> at *3-4.   As a result, the plaintiff's neck was injured.   <u>Id.</u> The defendant officer maintained that Garrison resisted arrest by assuming a fighting stance and then attempted to "head butt" the officer and eventually, kicked the officer.   <u>Id.</u> at *4-5.   Garrison was charged criminally, and ultimately, he pled guilty to simple assault pursuant to N.J.S.A. 2C:12-1(a) and

resisting arrest, N.J.S.A. 2C:29-2(a).  Nevertheless, Garrison pursued an excessive force claim against the defendant officer.

The Garrison court, by comparing the elements of an excessive force claim and simple assault, found that the excessive force claim was barred by Heck even when Garrison claimed that the use of force by the officer was unprovoked.  The court reasoned that, if the plaintiff argued he never assaulted the officer and that the officer's use of force was therefore excessive, the plaintiff would be contradicting his conviction for assault.  Id.  The court further reasoned, in the alternative, that had plaintiff argued the officer's use of force was simply not objectively reasonable, such a claim would "invalidate his assault conviction because it would imply that [plaintiff] acted in self-defense, which is a justification defense under New Jersey law."  Id. Indeed, "a citizen may protect himself whenever the force applied is excessive and unnecessary." Id. at 18 (quoting State v. Moriarty, 133 N.J. Super. 563 (App. Div. 1975).  However, because the plaintiff had not pled self-defense to the assault charges against him, the officer's use of force must have been reasonable.  Accordingly, the court explained that allowing Garrison to argue facts to the contrary would violate the principles of Heck and invariably overturn his conviction of simple assault.  Id. at *17.

Defendant also relies on Antoine v. Rucker, 2007 U.S. Dist. LEXIS 35323 (D.N.J. May 14, 2007).  In that case, plaintiff Antoine pled guilty to, and was convicted of, fourth degree assault against a police officer.  Relying on the rationale of Garrsion, the court held that any

judgment in Antoine's favor on his claim of excessive force would necessarily imply the invalidity of his conviction. Id. at *9-10.

At this juncture, the Court finds the dismissal of Plaintiff's excessive force claim premature.  In making this determination, the Court has reviewed the relevant case law on this subject extensively and notes that district courts in this circuit differ in their treatment of self-defense in the context of the Heck analysis, and there is a dearth of Third Circuit precedent to instruct this Court.  In Smith v. Mitchell, the district court found that in the context of self-protection during an arrest, self-defense will only serve as a defense to a charge of assault if the person arrested uses no greater force than that employed by the officer.  Smith v. Mitchell, No. 97-6115, 2000 U.S. Dist. LEXIS 20778, at *8 (D.N.J. Nov. 21, 2000); State v. Mulvihill, 270 A.2d 277, 279-80 (N.J. 1970); State v. Moriarty, 338 A.2d 14, 19-20 (App. Div. 1975).  The Smith court explained:

> If [a person] employs such greater force, then he becomes the aggressor and forfeits the right to claim self-defense to a charge of assault and battery on the officer.  Thus, if a person arrested uses an amount of force less than or equal to the amount of force being used by an officer allegedly using excessive force, he cannot be guilty of assault. Only where a person being arrested uses an amount of force greater than the amount of force used by an officer allegedly using excessive force can he be found guilty of assault.

Smith, 2000 U.S. Dist. LEXIS 20778 at *8-9 (citations and quotations omitted); see also Feeney, 2008 U.S. Dist. LEXIS 46916 at *14 ("by pleading guilty and waiving self-defense, Feeney effectively admits to having used an amount of force greater than that employed by the officers. This admission necessarily implies that the force employed by Officer Powell and Sergeant Reed

against Feeney was reasonable under the circumstances"); <u>Nicholson v. Kober</u>, No. 05-1212, 2007 U.S. Dist. LEXIS 49276, at *8-10 (W.D. Pa. Jul. 6, 2007)("applying <u>Heck</u> here would be consistent with the court decisions holding, as a matter of law, that an applicable "justified use of force" statute precludes a finding of excessive force under Section 1983").

Importantly, in making its decision, the <u>Smith</u> court reasoned that the self-defense justification was an important consideration in that case's <u>Heck</u> analysis because the plaintiff was convicted by a jury of, <u>inter alia</u>, aggravated assault against a police officer. Specifically, the jury must have found that "plaintiff drove his truck at defendant Mitchell, attempting to run over him. Defendant Mitchell dodged the truck and fired three shots at plaintiff, one of them lodging in plaintiff's left hand. Plaintiff ran from the truck and tried to escape, but was captured and arrested." <u>Smith</u>, 2000 U.S. Dist. LEXIS 20778 at *1-2. Based upon the factual underpinnings of the jury's verdict, the court found that <u>Heck</u> barred the plaintiff's excessive force claim because the jury implicitly rejected the plaintiff's self-defense theory and therefore, holding otherwise would call into question the plaintiff's conviction for aggravated assault.

Likewise, the court in <u>Feeney</u> found that the plaintiff's conviction of two counts of aggravated assault on two police officers, precluded his excessive force claim because he expressly waived any claim to self-defense at a plea hearing. The court explained that having admitted to shoving one officer and striking another at his plea hearing, Feeney is precluded from arguing that the police officers used excessive force in effectuating his arrest, particularly since Feeney himself explicitly described the incident as "one of uninterrupted physical struggle"

between him and the officers.  Feeney, 2008 U.S. Dist. LEXIS 46916 at *4, *13-15.  Under those

set of facts, the court held that Feeney's excessive force claim is barred by Heck.

 To the contrary, the court in Ford v. Sanders, No. 07-778, 2008 U.S. Dist. LEXIS 11424

(E.D. Pa. Feb. 15, 2008), held that the plaintiff's excessive force claim does not necessarily

undermine his convictions for simple assault.  In light of the Third Circuit's decision in Nelson

v.Jashurek, 109 F.3d 142 (3d Cir. 1997), the Ford court found Garrison and Nicholson, cited

above, unpersuasive.  In that connection, the court agreed with Nelson that:

> the fact that [the officer] was justified in using 'substantial force' to arrest
> [the plaintiff] does not mean that he was justified in using an excessive
> amount of force and thus does not mean that his actions in effectuating the
> arrest necessarily were objectively reasonable. In short, there undoubtedly
> could be 'substantial force' which is objectively reasonable and 'substantial
> force' which is excessive and unreasonable.

Ford, 2008 U.S. Dist. LEXIS 11424 at *9-10; Nelson, 109 F.3d at 145-46.  The Ford court

further reasoned that "Ford was convicted for simple assault against Officers Sanders and Velez,

but the judge did not address the validity of the officers' actions during the incident . . . Under

the reasoning of Nelson . . . a jury could find defendants used excessive force under the Fourth

Amendment . . . ."  Ford, 2008 U.S. Dist. LEXIS 11424 at *12-13.  An important distinction of

this decision is its lack of consideration of self-defense in the setting of a Heck analysis.  The

following courts are in accord with Ford: Davis v. Berks County, 2007 U.S. Dist. LEXIS 9892, at

*6 (E.D. Pa. Feb. 8, 2007); DiJoseph v. City of Philadelphia, 947 F.Supp. 834, 841 (E.D. Pa.

1996).

Distinguishing <u>Nelson</u>, the <u>Garrison</u> court explained that the plaintiff in <u>Nelson</u> was only convicted of resisting arrest, not assault, and therefore, <u>Nelson</u>'s reasoning is confined.  While the Third Circuit has not formally addressed this issue, several appeals court decisions have discussed this subject.  In <u>Green v. New Jersey State Police</u>, 246 Fed. Appx. 158, 162 n. 8 (3d Cir. 2007), plaintiff Green brought an excessive force claim after the state troopers arrested him for driving under the influence of alcohol.  <u>Id.</u> at 159.  During litigation, Green maintained that he never hit any of the officers, but he pled guilty to aggravated assault in state court and admitted that he kicked or struck two of the officers.  <u>Id.</u> at 160.  In a footnote, the court, in <u>dicta</u>, found that "it is doubtful that Green's excessive force claim would be barred by <u>Heck</u> . . . We agree with Green that his admission that during the struggle he came 'in contact either by striking or kicking two of the officers,' . . . would not, as a matter of logic, necessarily conflict with a finding of excessive force."  <u>Id.</u> at 162 n.8.  This finding rejected the defendants' argument that "by pleading guilty to aggravated assault, Green has implicitly acknowledged that the officers did not use excessive force."  <u>Id.</u>  Because this issue was not raised in the district court, the appeals court did not formally consider it.

It is noteworthy to remark that it appears the Third Circuit has had differing views on this subject.  In <u>Jennings</u>, plaintiff Jennings alleged that an officer, while under the influence of alcohol, used excessive force by shooting at him during the course of an arrest.  <u>Jennings</u>, 197 Fed. Appx. at 163.  The district court determined that the claims were barred as a matter of law by <u>Heck</u> because a judgment in favor of plaintiff on his excessive force claim would invalidate

the jury's rejection of plaintiff's self-defense theory and in turn, invalidate his attempted homicide conviction.  Id. at 164.  With little explanation, the Third Circuit affirmed the lower court's decision barring Jennings' excessive force claim under Heck.  Id.  This holding was the basis for the Garrison and Nicholson courts' decisions.

Finally, a recent decision from the Third Circuit in Lora-Pena v. FBI, 529 F.3d 503 (3d Cir. 2008), provides some guidance for this Court.  In Lora-Pena, the circuit court reversed a district court's decision to dismiss the plaintiff's excessive force claim pursuant to Heck.  In that case, the district court's Heck dismissal was based upon a guilty verdict against the plaintiff in state court.  In particular, the plaintiff was found guilty of three counts of assault against the arresting officers.  Id. at 505.  However, notwithstanding the conviction, relying on its previous Nelson decision, the Third Circuit reversed and explained:

> We cannot agree with the District Court that Lora-Pena's convictions for resisting arrest and assaulting federal officers bars his civil suit at the Rule 12(b)(6) stage. Despite the government's argument to the contrary, the question of whether the officers used excessive force was not put before the jury. The jury only determined whether the officers were acting within the scope of their official duties. Nowhere in the jury instructions did the trial judge state that the jury must determine whether the officers used excessive force against Lora-Pena . . . Lora-Pena's convictions for resisting arrest and assaulting officers would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to his own unlawful actions.

Id. at 506 (internal citations omitted).

As the Court noted at the beginning of this discussion, the various district courts' treatment of the Heck analysis in this context is not consistent, and not dispositive of the issues

here.   After considering the decisions in this area, this Court holds that <u>Heck</u> does not bar Hendrix's excessive force claim for two reasons.   First, while the PTI program may act to bar claims under <u>Heck</u>, in this case, Defendant simply has not provided the Court with any facts regarding the incident at issue that were admitted to by Hendrix before entering into the PTI program, other than the Indictment.   Accordingly, for the purpose of this motion, Hendrix only admitted that he "did attempt to cause or did purposely, knowingly or recklessly cause bodily injury to Detective David Neiderman . . . in the performance of his duties while in uniform . . . ." <u>See</u> Indictment dated March 31, 2005.   Without additional underlying facts, the Court cannot follow the reasoning under <u>Garrison</u> with respect to its self-defense analysis because Hendrix did not admit to using force during his arrest, nor did a jury find Hendrix guilty of assault.   This holding is consistent with the Third Circuit's approach in <u>Lora-Pena</u>.   Thus, even if Hendrix did use force on Neiderman during his arrest, it would not invalidate his disposition through the PTI program because a jury can still find that Neiderman used excessive force on Hendrix while effectuating his arrest.

Next, Plaintiff's allegations of excessive force <u>after</u> he was arrested are not inconsistent with his assault charge.   As a procedural matter, the Court notes at the outset that Defendant here moves pursuant to <u>Fed. R. Civ. P.</u> 12(b)(6), and thus, while Defendant submits, <u>inter</u> <u>alia</u>, depositions, reports and grand jury testimony, the Court can only rely upon a more limited record, which includes, as noted earlier, Plaintiff's Complaint and his Indictment.   In that regard, the Court cannot credit Defendant's testimony during his deposition or the grand jury proceeding

that contradict the allegations of excessive force after Plaintiff's arrest as set forth in the Complaint.

There are allegations here that Neiderman assaulted Hendrix not only before, but also after, he was arrested and subdued.  Importantly, this distinction was the focus of the <u>Smithart</u> court, which held that force used after an arrest can be considered excessive irrespective of the plaintiff's assaultive behavior during the course of an arrest.  <u>Smithart v. Towery</u>, 79 F.3d 951, 952 (9th Cir. 1996).  Based on the allegation that Neiderman pushed Plaintiff's head, causing it to strike the ground, Defendant used force greater than that required for Plaintiff's arrest and out of proportion to the threat which he posed to Neiderman.  More simply stated, after Hendrix was arrested and physically constrained, he did not pose a threat to Neiderman, and therefore, Neiderman's alleged push of Hendrix's head against the ground may have been unreasonable. Therefore, there would be no basis for Hendrix to assert a claim of self-defense since this alleged act of force by Neiderman was committed not during the course of the arrest, but rather, after.  In sum, while the Court has to construe the Complaint to the extent that it is consistent with the Indictment, there is simply no basis for this Court to dismiss Plaintiff's excessive force claim at this stage.  Therefore, Plaintiff's excessive force claim is not barred by <u>Heck</u>.

### D.    Assault and Battery Claim

Plaintiff also asserts a New Jersey state law tort claim for assault and battery against Neiderman.  Hendrix asserts that the actions of Neiderman constitute assault and battery.  In order to succeed on his assault and battery claim, Hendrix must demonstrate that Neiderman

26

attempted to cause, or purposely, knowingly, or recklessly caused him bodily injury.  Defendant's motion is denied for this claim for the same reasons as discussed above.

As a final matter, prior to this motion, Defendant moved to exclude Plaintiff's Police Practices Expert, W. Ken Katsaris.  The Court held the motion in limine in abeyance pending the disposition of the current motion to dismiss.  At the juncture, the Court will terminate the motion in limine and schedule a conference with the parties to discuss the issues related to the motion and any pending pre-trial matters.


DATED: December 29, 2009                       __/s/ Freda L. Wolfson_____
                                               The Honorable Freda L. Wolfson
                                                United States District Judge